The Honorable Billy Joe Purdom State Representative HCR 66, Box 34 Yellville, AR 72687-9605
Dear Representative Purdom:
This is in response to your request for an opinion regarding Act 833 of 1991, which is codified at A.C.A. §§ 14-284-401—409 (Cum. Supp. 1991 and Adv. Code Serv. 1992-93) and 26-57-614 (Adv. Code Serv. 1992-93). This act assessed a 0.5% insurance premium tax to provide additional funding for fire protection services within each county. See A.C.A. § 26-57-614. The tax moneys are disbursed to the counties in percentages set forth under A.C.A. §14-284-403 (Adv. Code Serv. 1992-93), and apportioned by each quorum court to municipalities and fire departments, as provided in § 14-284-402(a)(2), based upon population unless the County Intergovernmental Cooperation Council identifies the needs of the districts and municipalities, in which case apportionment is made by the quorum court based on those needs. A.C.A. §14-284-403(a)(2). (Adv. Code Serv. 1992-93).
Your questions with regard to these provisions are set forth and addressed below in the order posed.
 1. The Intergovernmental Council is comprised of the five city mayors in Marion County. The five cities represent only 32 percent of the Marion County population. They appear to have a disproportionate power over the balance of the County in deciding the appropriation of funds for rural fire departments. Please provide a ruling as to whether this is in violation of the 14th Amendment of the U.S. Constitution (one man, one vote rule).
It is my opinion that the answer to this question is "no." Although the "one person, one vote" guarantee under the equal protection clause of the 14th Amendment has been applied by the United States Supreme Court to a local government board composed of officials who became members as a matter of law upon election to their respective city offices,[1] (NYC Board ofEstimate v. Morris, 489 U.S. 688 (1989)), it is my opinion that this guarantee does not apply in this instance.
It must be conceded, as an initial matter, that the County Intergovernmental Cooperation Council ("Council") is similar to the "Board of Estimate" at issue in Morris in that the members automatically serve on the Council by virtue of their election to public office. The Council in each county consists of the county judge, the county clerk, and the mayor of each city and incorporated town within the county. A.C.A. § 14-27-102 (Cum. Supp. 1991). There is, however, a significant, and in my opinion decisive, difference between the powers and duties of the board at issue in Morris and the County Intergovernmental Cooperation Council. As noted by the Supreme Court in Morris, New York law assigns to the Board of Estimate a ". . . significant range of functions common to municipal governments." 489 U.S. at 694. The Board's considerable authority in formulating the city's budget, together with its land use, franchise, and contracting powers led the Court to conclude that it falls within ". . . the category of governmental bodies whose `powers are general enough and have sufficient impact throughout the district' to require that elections to the body comply with equal protection strictures.'"[2] Id. at 696, quoting Hadley, supra n. 1, at 54. The Court in Hadley applied the "one person, one vote" principle to the election
The Court in Hadley concluded that while the powers of the junior college trustees were "not fully as broad as those of the Midland County Commissioners," they were ". . . general enough and have sufficient impact throughout the district" to justify applying the "one person, one vote" principle. Id. at 54. The trustees levied and collected taxes, issued bonds with certain restrictions, hired and fired teachers, made contracts, collected fees, supervised and disciplined students, passed on petitions to annex school districts, acquired property by condemnation, "and in general managed the operations of the junior college. . . ."Id. at 53. The Midland County Commissioners in Avery
established and maintained the county jail, appointed numerous county officials, made contracts, built roads and bridges, administered the county welfare system, performed duties in connection with elections, set the county tax rate, issued bonds, adopted the county budget, built and ran hospitals, airports, and libraries, fixed school district boundaries, established a housing authority, and determined the election districts for county commissioners. Id. n. 6, citing Avery,390 U.S. at 476-477.
The powers and duties assigned to the Council under Act 833 of 1991 (see A.C.A. § 14-284-403(a)(2) (Adv. Code Serv. 1992-93)) are readily distinguishable from the functions performed by the governmental bodies in Morris, Hadley and
Board, although the boroughs vary greatly in population. It was successfully contended in that case that the system by which voters of geographic units of substantially different populations sent the same number of representatives to the Board violates the "one person, one vote" guaranty.
Avery, supra. The Council's sole function under Act 833 involves identifying the needs of the districts and municipalities for purposes of apportioning the premium tax moneys. While this is certainly a significant function that potentially affects the entire county, it is not the equivalent of the powers exercised by the respective bodies in those cases. As a result, the Council in my opinion does not fall within that category of governmental bodies whose powers are general enough to require compliance with the "one person, one vote" doctrine. The general nature of the powers exercised was a key factor in the Supreme Court's decision to apply the equal protection guaranty in those cases. The absence of that factor in this instance compels the conclusion that the "one person, one vote" principle is inapplicable.
 2. The rural fire departments feel the Intergovernmental Council should be made up of the County Judge, the County Clerk and the Mayor of each city and incorporated town within the County. When a vote was taken, only the five mayors voted. Does the County Clerk and the County Judge have a vote?
It is my opinion that the county clerk does not have a vote on the Council. The county judge has a vote only in the case of a tie vote. A.C.A. § 14-27-102 (Cum. Supp. 1991). Subsections (b) and (c) of § 14-27-102 state as follows:
 (b) The membership of each cooperation council shall consist of the county judge, the county clerk, and the mayor of each city and incorporated town within each county.
 (1) The county judge of each county shall serve as chairman of the cooperation council
 (2) The county clerk of each county shall serve as the secretary of the cooperation council, shall preside over cooperation council meetings in the absence of the council chairman, and shall be responsible for writing and submitting all reports of the cooperation council
 (c) Each member of the council shall have one (1) vote for the local government jurisdiction they represent on the cooperation council, except the chairman who shall vote only in the case of a tie vote.
Section 14-27-102 is part of the codification of Act 510 of 1987 (A.C.A. §§ 14-27-101—105 (Cum. Supp. 1991)). While it might be concluded at first glance that the county clerk has a vote as a "member of the council" (§ 14-27-102(c), above), a review of Act 510 as a whole clearly indicates that the "local government jurisdiction[s]" represented on the council are the "local government subdivisions within each county," also referred to as the "local communities," i.e., the cities and incorporated towns.See A.C.A. §§ 14-27-101(a) and (b), -102(a), and -104(a). It is clear that the county clerk does not represent a local government jurisdiction for purposes of the votes assigned under §14-27-102(c). And while the county clerk clearly presides over the council "in the absence of the council chairman" (§14-27-102(b)(2)), it is only the "chairman," i.e., the county judge (§ 14-27-102(b)(1)) who has a vote in the case of a tie (§14-27-102(c)).
 3. The Quorum Court passed Ordinance 91-20 that established an Advisory Committee to handle all aspects of Act 833 of 1991. The Intergovernmental Council bypassed the Advisory Committee and acted by itself in determining the distribution of Act 833 funds. Please issue an Attorney General's Opinion as to the legality of the Intergovernmental Council usurping the power of the Quorum Court. State law gives power to the Quorum Court. If State law delegates power to the Quorum Court, does Act 833 violate State law by giving power to the Intergovernmental Council superseding power over the Quorum Court?
There is, in my opinion, no usurpation of power under Act 833. It must be initially recognized that the General Assembly is, as a general matter, free to assign powers and duties to the Council and the Quorum Court as it sees fit. While the Quorum Court may exercise "local legislative authority," in accordance with Amendment 55 to the Arkansas Constitution, this authority may be denied by the Constitution or by law, i.e., laws passed by the General Assembly. Ark. Const. Amend. 55, § 1. Thus, Act 833 does not "violate State law" by authorizing the Council to notify the Quorum Court of the fire protection needs, and by requiring the Quorum Court to apportion the moneys based on those needs. See
A.C.A. § 14-284-403(a)(2).
With regard to Marion County Ordinance No. 91-20, this Ordinance does not purport to alter the powers and duties assigned under Act 833; nor, in my opinion, could the Ordinance legally have that effect even if that were intended. As I read the Ordinance, it establishes the "Advisory Committee" as an advisory body to the Quorum Court. The Intergovernmental Cooperation Council is not required to report to this Committee. When you state that the Council "bypassed the Advisory Committee and acted by itself in determining the distribution of Act 833 funds," I assume you mean that the Council did not consult with or otherwise apprise the Advisory Committee when it notified the Quorum Court of the fire protection needs of the districts and municipalities. This, in my opinion, was consistent with Act 833. (See A.C.A. §14-284-403(a)(2)). Assuming that the Council otherwise properly notified the Quorum Court of those needs, there was no violation of state law.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] This guaranty has been expressed as "a general rule [that] whenever a state or local government decides to select persons by popular elections to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election. . . ." Hadley v. Junior College District,397 U.S. 50 (1970). The rule has been held to have no applicability to appointive offices. Grivetti v. Illinois State ElectoralBoard, 335 F.Supp. 779 (N.D. Ill. 1971), aff'd. 406 U.S. 913
(1972).
[2] The Board of Estimate in Morris is comprised of the mayor, comptroller, city council president, and the five borough presidents. Each borough president is elected by the residents of the borough and is allotted one vote on the of the trustees of a junior college district. The Hadley court recalled its prior ruling in Avery v. Midland County, 390 U.S. 474 (1968), stating:
 [W]e applied this same principle to the election of Texas county commissioners, holding that a qualified voter in a local election also has a constitutional right to have his vote counted with substantially the same weight as that of any other voter in a case where the elected officials exercised `general governmental powers over the entire geographic area served by the body.' [Emphasis added.]
397 U.S. at 53, quoting Avery, 390 U.S. at 485.